IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **R.S.L. a minor, by and through her mother and next friend, Sharon Lacey,** | ) ) ) ) |
| **Plaintiff,** | ) ) |
| v. | ) Case No.: 2:09-CV-701-VEH ) |
| **MICHAEL J. ASTRUE,** **Commissioner of Social Security,** | ) ) ) |
| **Defendant.** | ) |

## **MEMORANDUM OPINION**[1]

This action was originally filed by Sharon Lacey ("Ms. Lacey") on behalf of her daughter, R.S.L.,[2] pursuant to Title XVI of the Social Security Act.  R.S.L. seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner" or "Secretary"), which denied her application for

---

[1] In deciding the merits of this appeal, the court adopts, in part, the format that it used in another childhood disability case, *Adams v. Barnhart*, No. 2:06-CV-2031-VEH, (Doc. 11) (N.D. Ala. July 13, 2007).

[2] For purposes of this opinion, the plaintiff will be referred to as "R.S.L.," rather than her mother, Ms. Lacey, because the legal standards apply to her and her impairments.  *See Stanton v. Astrue*, 482 F. Supp. 2d 1318, 1320 (N.D. Ala. 2007).

Social Security Income ("SSI") benefits.[3]  The case is ripe for review pursuant to 42 U.S.C. § 405(g), of the Social Security Act.[4]  For the reasons set out below the court concludes that the Commissioner's decision is due to be affirmed.

## STANDARD OF REVIEW

The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied.  *Richardson v. Perales,* 402 U.S. 389, 390, 41, 91 S. Ct. 1420, 1421, 1432, 28 L. Ed. 2d 842 (1971); *McRoberts v. Bowen,* 841 F.2d 1077, 1080 (11th Cir. 1988); *Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1983); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239.  This court will determine that the administrative law judge's ("ALJ") opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would

---

[3] In general, the legal standards applied are the same regardless of whether a claimant seeks SSI or Disability Insurance Benefits ("DIB").  However, separate, parallel statutes and regulations exist for SSI and DIB claims.  Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates.  The same applies to citations of statutes or regulations found in quoted court decisions.

[4] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

accept as adequate to support a conclusion." *Id*. Substantial evidence is "more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler*, 703 F.2d at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his entitlement for a period of disability, an individual under age 18 must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[5] The law defines children's "disability" as "a medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations, and that can be expected to cause death or that has lasted or can be expected to last for a continuous period or not less than 12 months." 20 C.F.R. § 416.906; 42 U.S.C. § 1382c(a)(3)(C)(i).

In determining whether a child (an individual under age 18) is disabled, the Regulations provide a three-step process. 20 C.F.R. § 416.924(a). The Commissioner must determine in sequence:

> First, the ALJ must determine whether the child is engaged in substantial gainful activity. *Wilson*, 179 F.3d at 1277 n.1. If yes, the child is not disabled, but if no, the ALJ determines whether the claimant has a severe impairment. *Id.* If not, the child is not disabled. *Id.* If yes, the ALJ then considers whether the child has an impairment that meets, medically equals, or functionally equals the Listings of Impairments. *Id.*

---

[5] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, as current through March 12, 2010.

If the child satisfies a Listing, the child is conclusively disabled. *Id. Henry v. Barnhart,* 156 Fed. Appx. 171, 173 (11th Cir. 2005) (citing 20 C.F.R. § 416.924(a); *Wilson v. Apfel*, 179 F.3d 1276, 1277 n.1 (11th Cir. 1999)).

A medically determinable impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 416.908. It must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not merely by a claimant's statement of symptoms. *Id*.

Functional equivalence is found if the child's impairment - or combination of impairments - "result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain[.]" 20 C.F.R. § 416.926a (emphasis added). "A 'marked' limitation is defined as a limitation that 'interferes seriously with [the] ability to independently initiate, sustain, or complete activities,' and is 'more than moderate.'" *Henry*, 156 Fed. Appx. at 174 (citing 20 C.F.R. § 416.926a(e)(2)(i)). "An 'extreme' limitation is reserved for the 'worst limitations' and is defined as a limitation that 'interferes very seriously with [the] ability to independently initiate, sustain, or complete activities,' but 'does not necessarily mean a total lack or loss of ability to function.'" *Henry*, 156 Fed. Appx. at 174 (citing 20 C.F.R. § 416.926a(e)(3)(i).

In order to determine whether a minor claimant's status functionally equals the criteria for an impairment that is listed in the Regulations, the ALJ must consider "activities in terms of six domains." 20 C.F.R. § 416.926a(b)(1). These domains are:

(i)    Acquiring and using information;

(ii)   Attending and completing tasks;

(iii)  Interacting and relating with others;

(iv)   Moving about and manipulating objects;

(v)    Caring for yourself; and,

(vi)   Health and physical well-being.

20 C.F.R. § 416.926(a)(b)(1)(i)-(vi). If the impairment(s) does not satisfy the duration requirements, or does not meet, medically equal, or functionally equal one of the listings in the Regulations, a finding of not disabled will be reached and the claim will be denied. *See* 20 C.F.R. § 416.924(d)(2).

## **FACTUAL AND PROCEDURAL HISTORY**[6]

R.S.L. was five years old at the time of the hearing before the ALJ. (Tr. 251). She was enrolled in kindergarten at the time of the ALJ's decision. (Tr. 18).

R.S.L. filed an application for SSI on January 13, 2004. (Tr. 26, 47). Ms.

---

[6] This is R.S.L's second SSI disability application. (Tr. 19). Her first attempt resulted in a denial of benefits by the ALJ on September 5, 2003, which ruling was affirmed by the Appeals Council on March 22, 2004. (*Id.*).

Lacey claims that R.S.L. became disabled on October 1, 2003, due to asthma, failure to thrive, depression and post-traumatic stress disorder. (Tr. 18, 48). The claim was denied by the Commissioner on April 16, 2004. (Tr. 24-25).

R.S.L. filed a timely request for a hearing before the ALJ on May 27, 2004. (Tr. 23). After conducting the hearing held on October 20, 2005, the ALJ concluded on January 27, 2006, that R.S.L. was not disabled and denied her application for benefits. (Tr.18-22). The Appeals Council denied R.S.L.'s request for review of the ALJ's decision on February 27, 2009. (Tr. 4-6).

R.S.L. filed a complaint on April 13, 2009, which asks this court to review the ALJ's decision. (Doc. 1). The court has carefully considered the record and affirms the decision of the ALJ.

## **FINDINGS OF THE ADMINISTRATIVE LAW JUDGE**

Under step one of the three-part test for disability in children, the ALJ found that R.S.L. had not engaged in any substantial gainful activity after the alleged onset date of October 1, 2003. (Tr. 18, 21 ¶ 2). Accordingly, the ALJ proceeded to step two of the analysis.

Under step two, the ALJ found that R.S.L. had an impairment, *i.e.*, asthma, but that it was "controlled [through] medication." (Tr. 21 ¶ 3). Regarding, post-traumatic stress disorder (and depression), the ALJ concluded that "no objective evidence of a

severe <u>mental</u> impairment [existed] although the claimant alleged" otherwise. (Tr. 21).

As for R.S.L.'s failure to thrive, the ALJ determined that the condition "was refuted by the claimant's treating physician who stated that the claimant's growth was not affected by asthma [or any condition.]" (Tr. 21, 204).

The ALJ then evaluated R.S.L. pursuant to step three. Under this third section, the ALJ must analyze (1) whether R.S.L.'s impairments meet, medically equal, or functionally equal any of the listed impairments and, if so, (2) whether the impairments meet the duration requirement. 20 C.F.R. § 416.924(c).

Here, the ALJ first determined that "the claimant's impairments do not meet or equal any of the criteria" applicable to any listed impairment. (Tr. 21 ¶ 4). Second, the ALJ also found that "the claimant's impairments do not result in marked or severe functional limitations[.]" (Tr. 21 ¶ 5). Based on these findings relating to the third step, the ALJ concluded that R.S.L. had not been "a disabled child" at any time through the date of his decision. (Tr. 22).

## **ANALYSIS**

This court is limited in its review of the Commissioner's decision in that the Commissioner's findings of fact must be reviewed with deference. *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (citing *Graham v. Bowen*, 790 F.2d

1572, 1574-75 (11th Cir. 1986)). In contrast to factual findings, however, the Commissioner's conclusions of law are subject to an "exacting examination" or *de novo* review. *See Martin*, 894 F.2d at 1529 (citing *Graham*, 790 F.2d at 1574-75); *Martin*, 894 F.2d at 1529 ("The Secretary's failure to apply the correct legal standards or to provide the reviewing court with sufficient basis for a determination that proper legal principles have been followed mandates reversal.") (citations omitted).

On appeal, R.S.L. generally attacks the ALJ's decision as unsupported by substantial evidence. (Doc. 8 at 1). More specifically, R.S.L. argues that the ALJ failed to (1) give adequate weight to the opinion of her treating source, namely, Dr. Arista Rayfield ("Dr. Rayfield"), (2) properly evaluate the severity of R.S.L.'s post-traumatic stress disorder, and (3) fully develop the record by neglecting to seek further medical review. (*Id.* at 6, 8, 9). The court turns to R.S.L.'s specific issues first.

**I.     The ALJ did not err in the weight he assigned to Dr. Rayfield's opinion.**

Regarding Dr. Rayfield's psychiatric assessment completed on December 14, 2004 for R.S.L., the ALJ found:

> Dr. Rayfield found mild impairment in functioning, but did not specify a diagnosis on which she based this assessment. Due to a lack of a diagnosis that assessment is entitled to little probative weight.

(Tr. 20).

The evaluation of R.S.L. completed by Dr. Rayfield indicates mostly mild functional ratings with the exception of one mild to moderate marking for R.S.L.'s "estimated deficiencies [in the areas of] concentration, persistence, or pace resulting in the frequent failure to complete tasks in a timely manner[.]" (Tr. 197). While the form that Dr. Rayfield filled out does not expressly ask for a diagnosis, the document does have a "COMMENTS" section where one could be listed but, in this instance, that area has been left blank. (Tr. 198). Additionally, Dr. Rayfield could have separately provided a diagnosis in another document. Therefore, the ALJ properly discounted Dr. Rayfield's opinion on the basis that R.S.L.'s impaired functionality is not tied to any particular psychiatric or other mental diagnosis.

Alternatively, even if the ALJ committed error in the weight he assigned to Dr. Rayfield's report, such error was harmless[7] because none of Dr. Rayfield's determinations met the "marked" or "extreme" level and, for a record of functional disability to exist, at least two domains must be marked or at least one must be severe. Therefore, Dr. Rayfield's opinion, even if given great weight, fails to substantiate the

---

[7] Harmless error is "[a]n error that does not effect a party's substantive rights or the case's outcome. A harmless error is not grounds for reversal." *Black's Law Dictionary* 563 (7th ed. 1999); *see also* Fed. R. Civ. P. 61 ("At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.") (emphasis added).

viability of either functionality prong and the ALJ's decision is due to be affirmed, even if it is flawed. *See, e.g., Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir.1983) (applying the harmless error doctrine in the context of a social security case); *see also Mays v. Bowen*, 837 F.2d 1362, 1364 ("Procedural perfection in administrative proceedings is not required[;] [t]he court will not vacate a judgment unless the substantial rights of a party have been affected.") (citations omitted); *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires the Commissioner to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result.") (citations omitted).

## II.  The ALJ properly evaluated the severity of R.S.L.'s post-traumatic stress disorder.

R.S.L. contends that her diagnosis of post-traumatic stress disorder and related symptoms show that she satisfies either Listing 112.06 relating to anxiety disorders or Listing 112.04 pertaining to mood disorders. Alternatively, R.S.L. maintains that her condition functionally equals either one of these listings.

The ALJ's determination that R.S.L. did not meet the criteria of any listed impairment is supported by substantial evidence. In particular, the ALJ expressly relied upon the childhood disability form completed on R.S.L. at the state agency

level in April 2004,[8] which substantiates that R.S.L. did not meet the requirements of any listing. (Tr. 116-23).

Regarding R.S.L.'s physical impairments, the "NOT SEVERE" box number 1 was checked. (Tr. 116). As defined, this means that, from a physical standpoint, R.S.L. suffered from "[n]o medically determinable impairment OR [alternatively, had an] [i]mpairment or combination of impairments [that] is a slight abnormality or combination of slight abnormalities that results in no more than minimal function limitations." (*Id.*).

As for R.S.L.'s mental assessment, the "IMPAIRMENT OR COMBINATION OF IMPAIRMENTS IS SEVERE, <u>BUT DOES NOT MEET, MEDICALLY EQUAL, OR FUNCTIONALLY EQUAL THE LISTINGS</u>" box was marked. (Tr. 117 (emphasis by underlining added)). Accordingly, no conclusion was drawn at the state agency level that R.S.L. satisfied or medically equaled a listed impairment.

As for R.S.L.'s alternative argument, she confuses the test for finding functional childhood disability and at best only identifies one domain, *i.e.*, attending and completing tasks, in which one of her treating medical providers has identified

---

[8] The document indicates that Dr. Percy G. Sullivan ("Dr. Sullivan") was the "[c]onsultant with overall responsibility" for completing the form. (Tr. 118). Additionally, a licensed psychologist, Dr. Gordon J. Rankart ("Dr. Rankart") (Tr. 115), "provide[d] input [with respect] to the[] findings[.]" (Tr. 118). Finally, the disability specialist was Beth McDaniel. (Tr. 116).

some limitation. (Tr. 197). However, as explained above, a mild or moderate limitation in one domain does not establish functional disability. Moreover, the domain ratings from the childhood disability form provide substantial evidence that R.S.L. does not functionally meet a listed impairment. (Tr. 119-20, 122 (indicating only either "No limitation" or "Less than marked" throughout report)).

### III. The ALJ fully develop the record.

R.S.L. also suggests that the ALJ failed to fully develop the record by neglecting to seek further medical review. However, R.S.L. only generally raises this contention and does not put forth any particular areas of the record that are purportedly incomplete with respect to R.S.L.'s claimed impairments of asthma, failure to thrive, depression and post-traumatic stress disorder. (Tr. 8 at 9 (arguing that "[t]he Commissioner erred in failing to seek a Consultative Exam which included an IQ section and in failing to have a Medical Examiner provide testimony at the hearing in the case")).

Relatedly, this court has not independently identified an issue that necessarily requires further medical development. As the Commissioner correctly observes, "[a]n ALJ is not required to order a consultative examination as long as the record contains sufficient evidence for the ALJ to make an informed decision." (Doc. 9 at 13 (citing *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001) (other citations omitted)).

The record here falls into the adequately complete category, especially in light of the pertinent information provided through R.S.L.'s various treating sources,[9] and the ALJ did not commit any legal error in its development.

**IV.   The ALJ's decision is supported by substantial evidence.**

R.S.L. also maintains that the ALJ's decision is not supported by substantial evidence. In this section, R.S.L. primarily argues that the "ALJ failed to show good cause why the opinion of the Plaintiff's treating sources, her teachers and her mother should be given substantial or considerable weight." (Doc. 8 at 5).

As the ALJ outlined in his decision, the records and reports from Plaintiff's various treating sources and teachers failed to substantiate R.S.L's claimed disabled status. For example, as noted above in § I., none of Dr. Rayfield's determinations reported in the "TREATING HEALTHCARE PROVIDER ASSESSMENT" that she completed in December 2004, met the "marked" or "extreme" level. (Tr. 197-98).

Similarly, another treating physician, from Mid-Town Pediatrics, completed a comparable form on R.S.L. in February 2005, which indicated only "Mild" ratings, suggested no limits on physical activity due to R.S.L.'s asthma (as treated with medications), and found no impairment in R.S.L's growth. (Tr. 202-04).

Likewise, for the most part, R.S.L.'s schools records all confirmed that she was

---

[9] As highlighted in § I., *supra*, and § IV, *infra*.

functioning acceptably. (*See, e.g.*, Tr. 100-08 ("TEACHER QUESTIONNAIRE" completed by Shirley Melton on March 5, 2004, indicating no domain problems observed); Tr. 186 (noting that R.S.L. "seems to be doing very well." ); Tr. 190 (noting that R.S.L. "is doing very good"); Tr. 199-200A (reporting no problems associated with R.S.L.'s post-traumatic stress disorder or asthma on "PRE-SCHOOL ASSESSMENT" form completed on January 3, 2005)).  Moreover, the ALJ adequately explained that he did not credit the one behavioral abnormality reported in August 2005 (Tr. 20 (citing Ex. B-8E))[10] "as unsupported by the medical evidence, the [other] school records and the teacher questionnaires."  (Tr. 20).

As for Ms. Lacey's testimony, the ALJ did give good cause for disbelieving it, including in particular the fact that the claimed severity of R.S.L.'s conditions was belied by her treating providers and other sources.  In sum, the ALJ explained that while Ms. Lacey testified that R.S.L. was "disabled due to asthma, post-traumatic

---

[10] The court notes that despite being referred to by the ALJ in his decision, Ex. B-8E inexplicably appears to be missing from the administrative record compiled in connection with R.S.L.'s appeal.  R.S.L. has not raised any issue about this omission in her brief; nor has the Commissioner.  In any event, there is no indication from reviewing the record that this particular school occurrence involving R.S.L. was anything more than a one-time, isolated incident.  Also, it appears from the hearing transcript that this document was offered by R.S.L. as being consistent with Dr. Rayfield's assessment of R.S.L.  (Tr. 242).  As discussed above in § I., even giving it great weight, Dr. Rayfield's opinion is insufficient to satisfy the childhood disability standard; therefore, the existence *vel non* of a subsequent school situation that is consistent with it is inconsequential.

stress disorder, and failure to thrive[,] [h]er allegations were not supported by the medical evidence." (Tr. 20). Relatedly, the ALJ also observed that R.S.L.'s "teachers did not report and the school records <u>did not show</u> any significant academic or behavioral problems at school." (Tr. 21(emphasis added)).

For example, with to respect to R.S.L.'s failure to thrive, one of her treating physicians "reported that growth was not impaired due to any physical condition." (Tr. 20, 204). Similarly, the ALJ discounted Ms. Lacey's testimony about R.S.L.'s poor school performance on the basis of R.S.L.'s numerous favorable school and psychological reports. (Tr. 20). Likewise, R.S.L.'s asthma medical records refuted Ms. Lacey's claim that complications from the condition rendered R.S.L. disabled. (Tr. 20 (citing B-10F at 3) (treating physician record indicating that R.S.L.'s asthma under control through medication)).

Accordingly, the ALJ adequately explained his reasoning behind rejecting Ms. Lacey's description of R.S.L's symptoms. Alternatively, even if the ALJ committed legal error in this regard, such mistake was harmless[11] because Ms. Lacey, without more, cannot legally establish her daughter's disabled status and the remainder of the record, on the whole, overwhelmingly disconfirms R.S.L.'s childhood disability claim. *See* 20 C.F.R. § 416.928(a) ("Your statements (or those of another person)

---

[11] *See* discussion of harmless error doctrine in § I., *supra*.

alone, however, <u>are not enough</u> to establish that there is a physical or mental impairment.") (emphasis added)).

## CONCLUSION

Based upon the court's evaluation of the evidence in the record and the submissions of the parties, the court finds that the Commissioner's final decision is supported by substantial evidence and applies the proper legal standards. Accordingly, the decision of the Commissioner will be affirmed by separate order.

**DONE** and **ORDERED** this the 26th day of March, 2010.

*[signature]*

**VIRGINIA EMERSON HOPKINS**
United States District Judge